UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      v.                                                  **DECISION AND ORDER**
                                                                 19-CR-57S

JOSE O. FELIX,

                          Defendant.

## I. INTRODUCTION

Presently before this Court is Defendant Jose O. Felix's Motion for Compassionate Release, which the government opposes. See 18 U.S.C. § 3582 (c)(1)(A). For the reasons discussed below, Felix's motion is denied.

## II. BACKGROUND

On April 3, 2019, Felix pleaded guilty to (1) possessing with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 841 (a)(1), and (2) possessing a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924 (c)(1)(A)(i). (Docket Nos. 29, 31.) Approximately four months later, on July 31, 2019, this Court sentenced Felix in the aggregate to 123 months' imprisonment, 4 years' supervised release, a $200 special assessment, and no fine, fees, or costs. (Docket Nos. 41, 43.) Felix is presently serving his sentence at FCI Loretto, with a release date of April 11, 2028.[1]

On May 6, 2020, Felix moved for compassionate release to home confinement or for a sentence reduction to time served under 18 U.S.C. § 3582 (c)(1)(A)(i) on the ground

---

[1] See https://www.bop.gov/inmateloc/ (last visited July 24, 2020).

1

that he is at heighted risk to develop COVID-19 due to his medical conditions. (Docket Nos. 47, 48, 54.) The government opposes the motion. (Docket Nos. 51-53.)

### III. DISCUSSION

**A.     Compassionate Release under 18 U.S.C. § 3582 (c)(1)(A)(i)**

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020). One such statute is 18 U.S.C. § 3582 (c)(1)(A)(i) which, as amended by the First Step Act of 2018,[2] provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553 (a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute. See United States v. Ebbers, 432 F. Supp. 3d 421, 426-27 (S.D.N.Y. 2020). A defendant proceeding on his or her own motion may meet that burden

---

[2] Congress amended 18 U.S.C. § 3582 (c)(1)(A) in the First Step Act of 2018 to allow prisoners to bring their own motions for compassionate release after proper exhaustion. See Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018). The previous version of the statute permitted only the Bureau of Prisons to bring compassionate-release motions. See, e.g., United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *1 n.1 (S.D.N.Y. Feb. 4, 2020) (explaining the First Step Act amendment); United States v. Gotti, 433 F. Supp. 3d 613, 614-15 (S.D.N.Y. 2020) (same).

by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is consistent with the applicable Sentencing Guidelines provisions. See 18 U.S.C. § 3582 (c)(1)(A)(i); United States v. Perez, 17 Cr. 513-3 (AT), 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020).  If the court finds, after consideration of the applicable 18 U.S.C. § 3553 (a) factors, that the defendant has met this burden, it may reduce the defendant's sentence under the statute.  See 18 U.S.C. § 3582 (c)(1)(A)(i); see also United States v. Gileno, No. 3:19-CR-161-(VAB)-1, 2020 WL 1307108, at *1-2 (D. Conn. Mar. 19, 2020).

The statutory exhaustion requirement is mandatory and "must be strictly enforced." United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (citing Theodoropoulos v. I.N.S., 358 F.3d 162, 172 (2d Cir. 2004)); United States v. Cassidy, 17-CR-116S, 2020 WL 1969303, at *3-8 (W.D.N.Y. Apr. 24, 2020) (finding exhaustion mandatory).  The exhaustion requirement is met when the earlier of two circumstances occurs: (1) the defendant fully exhausts all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf, [3] or (2) 30 days lapse from the date the warden of the

---

[3] The Scparta court explained the administrative process before the Bureau of Prisons as follows:

> First, an inmate must request the warden of her facility to file a compassionate-release motion on her behalf.  28 C.F.R. § 571.61 (a). Second, if the warden denies the prisoner's request, she has 20 days to appeal to the BOP's Regional Director.  Id. § 571.63 (a) (providing that denials of compassionate-release requests are governed by the BOP's general Administrative Remedy Program, contained in 28 C.F.R. §§ 542.10-542.19); id. § 542.15 (a) ("An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response.").  Third, if the Regional Director denies the prisoner's request, she then has 30 days to appeal to the BOP General Counsel.  Id. § 542.15 (a).  A decision from the General Counsel

defendant's facility receives the defendant's request to file such a motion on his or her behalf.  See 18 U.S.C. § 3582 (c)(1)(A).

Congress delegated to the Sentencing Commission the task of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582 (c)(1)(A)(i).  See 28 U.S.C. § 994 (t).  The Commission, in turn, promulgated a Policy Statement concerning sentence reductions under 18 U.S.C. § 3582 (c)(1)(A) in § 1B1.13 of the United States Sentencing Guidelines.  The Commentary to that section contains four examples of circumstances that constitute "extraordinary and compelling reasons" for a sentence reduction: "Medical Condition of the Defendant"; "Age of the Defendant"; "Family Circumstances"; and "Other Reasons".  See U.S.S.G. § 1B1.13.

At issue here are the "Medical Condition of the Defendant" and "Other Reasons" examples.  The "Medical Condition of the Defendant" example provides as follows:

> Medical Condition of the Defendant—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease and advanced dementia.
>
> (ii) The defendant is—
>
>    (I) suffering from a serious physical or medical

---

is the final step in the BOP's Administrative Remedy Program, id., and therefore "constitutes a final administrative decision," id. § 571.63 (b).

United States v. Scparta, 18-cr-578 (AJN), 2020 WL 1910481, at *7 (S.D.N.Y. Apr. 20, 2020).

>> (II) suffering from a serious functional or cognitive impairment, or
>>
>> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 comment n. 1 (A).

The "Other Reasons" example is a catch-all provision encompassing "an extraordinary and compelling reason other than, or in combination with, the [other] reasons described."[4] Id. n. 1 (D).

As it relates to the requirement that a sentence reduction be consistent with the applicable Sentencing Guidelines provisions, U.S.S.G. § 1B1.13 is once again the relevant provision. It provides that a court may reduce a sentence if, after consideration of the 18 U.S.C. § 3553 (a) factors, it determines that

> (1) (A) extraordinary and compelling reasons warrant the reduction; or
>
> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559 (c) for the offense or offenses for which the defendant is

---

[4] The Bureau of Prisons has implemented a Program Statement to guide its own implementation of 18 U.S.C. § 3582 (c)(1)(A). See Bureau of Prisons Program Statement 5050.50, eff. January 17, 2019 (available at https://www.bop.gov/PublicInfo/execute/policysearch?todo=query# (last visited July 24, 2020)). This Court assumes without deciding that this Program Statement is non-binding as it relates to the "Other Reasons" provision of U.S.S.G. § 1B1.13 comment n. 1 (D), and that it is therefore not constrained by what the Director of the Bureau of Prisons might consider other extraordinary and compelling reasons for sentence reduction. See, e.g., United States v. Marks, 03-CR-6033L, 2020 WL 1908911, at *5-7 (W.D.N.Y. Apr. 20, 2020) (finding that post-First Step Act, district courts are no longer bound by the specific categories warranting sentence reduction identified by the Sentencing Commission in U.S.S.G. § 1B1.13, including affording any deference to the Director for purposes of U.S.S.G. § 1B1.13 comment n. 1 (D) ("Other Reasons")).

5

>   imprisoned;
>
>   (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142 (g); and
>
>   (3) the reduction is consistent with this policy statement.

See U.S.S.G. § 1B1.13.

Finally, district courts have broad discretion in deciding whether to grant or deny motions for sentence reduction. See Gileno, 2020 WL 1307108, at *2.

**B.      Felix's Motion for Compassionate Release**

**1. Exhaustion of Administrative Rights**

As indicated above, 18 U.S.C. § 3582 (c)(1)(A) contains a threshold exhaustion requirement. To satisfy this requirement, a defendant must demonstrate that either (1) he or she fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf, or (2) 30 days have lapsed from the date the warden of the defendant's facility received the defendant's request to file such a motion on his or her behalf. See 18 U.S.C. § 3582 (c)(1)(A).

For reasons discussed at length in two previous decisions (fully incorporated herein), this Court has found that the statutory exhaustion requirement is mandatory and cannot be excused. See Cassidy, 2020 WL 1969303, at *3-8; United States v. Schultz, 17-CR-193S, 2020 WL 1872352, at *3-6 (W.D.N.Y. Apr. 15, 2020); see also United States v. Montanez, 15-CR-122G, 2020 WL 2183093, at *2-11 (W.D.N.Y. May 5, 2020) (finding § 3582 (c)(1)(A)'s exhaustion requirement mandatory).

Here, Felix submitted his request for compassionate release to the warden of FCI

6

Loretto on May 14, 2020.  (Memorandum of Law, Docket No. 51-2, Exhibit B.)  The warden denied his request on May 29, 2020.  (Id. at Exhibit C.)  Thirty days having lapsed since May 14, 2020, this Court finds that Felix has satisfied the statutory exhaustion requirement, and the government does not contend otherwise.

### 2. Extraordinary and Compelling Reasons for Sentence Reduction

Felix has served approximately 12 months of his 123-month sentence.  He is a 42-year-old man who claims to have underlying medical conditions that make him highly susceptible to COVID-19, consisting of high blood pressure, difficulty breathing, sleep apnea, chest pain, and allergic reactions.  (Motion for Compassionate Release, Docket No. 47, p. 7.)  If granted compassionate release, Felix plans to return to his apartment in Niagara Falls and support himself with his social security disability benefits.  (Id. p. 8.)

Felix submitted progress notes from his primary care physician dated July 8, 2019.  (Docket No. 54.)  At that time, Felix's blood pressure was within the normal range at 105/80,[5] and he self-reported allergies and trouble breathing and sleeping.  (Id.)  The physician found Felix's general health to be "good" and noted mild sleep apnea, allergies, chest pain, difficulty breathing, insomnia, and sleep apnea.  (Id.)  The physician diagnosed Felix with sleep apnea and allergies.  (Id.)

The government submitted Felix's most recent medical records from the Bureau of Prisons.  (Docket No. 53.)  An April 16, 2020, Inmate Report Form lists none of the conditions Felix claims to have as "current health problems" and indicates that he has no known allergies.  (Id.)  At his last examination on March 17, 2020, Felix's blood pressure

---

[5] According to the Centers for Disease Control and Prevention, normal blood pressure range is 120 or less (systolic) over 80 or less (diastolic).  See https://www.cdc.gov/bloodpressure/facts.htm (last visited July 24, 2020).

7

was again within the normal range at 116/79, and he denied chest pain at rest or with exertion and denied any sleeping problems. (Id.) These records are consistent with the information Felix provided during his presentence investigation interview on May 1, 2019, when he claimed to have high blood pressure, but denied any other health issues, aside from a serious back injury that required surgery. (Presentence Investigation Report, Docket No. 38, ¶¶ 30, 75, 76.)

It appears from these medical records that Felix has mild sleep apnea and mild allergies. To the extent he experienced chest pain or difficulty breathing in July 2019, those issues appear to have resolved as there is no indication of any such problems in his most recent medical records. In addition, there is no history of or treatment for high blood pressure.

Having thoroughly reviewed the record, this Court finds that none of Felix's medical conditions constitute an extraordinary and compelling reason for a sentence reduction under the medical-condition section of U.S.S.G. § 1B1.13. None of the conditions are a terminal illness (i.e., a serious and advanced illness with an end of life trajectory), see U.S.S.G. § 1B1.13 comment n. 1 (A)(i); nor are any a serious condition, impairment, or age-related deterioration that substantially diminishes Felix's ability to provide self-care, see U.S.S.G. § 1B1.13 comment n. 1 (A)(ii). See United States v. Korn, 15-CR-81S, 11-CR-384S, 2020 WL 1808213, at *3-6 (W.D.N.Y. Apr. 9, 2020).

As for the "Other Reasons" section of U.S.S.G. § 1B1.13 comment n. 1 (D), which provides for relief if there exist extraordinary and compelling reasons for sentence reduction other than (or in combination with) what is specifically prescribed, Felix maintains that his medical conditions make him highly susceptible to contracting and

dying from COVID-19.  Such is not the case.

COVID-19, of course, is the sweeping, potentially deadly, worldwide pandemic that required the President of the United States to declare a national emergency on March 13, 2020.  The Centers for Disease Control and Prevention ("CDC") has determined that individuals with certain underlying medical conditions, particularly if not well controlled, are at high risk for severe illness from COVID-19.[6]  See Jones v. Wolf, No. 20-CV-361, 2020 WL 1643857, at *8 (W.D.N.Y. Apr. 2, 2020) (taking judicial notice that "for people of advanced age, with underlying health problems, or both, COVID-19 causes severe medical conditions and has increased lethality") (quoting Basank v. Decker, 20 Civ. 2518 (AT), 2020 WL 1481503, at *3 (S.D.N.Y. Mar. 26, 2020)).  Those medical conditions consist of cancer, chronic kidney disease, chronic obstructive pulmonary disease, immunocompromised state, obesity, serious heart conditions, sickle cell disease, and Type 2 diabetes melitus, none of which Felix has.[7]  The CDC has also identified medical conditions that *might* make an individual at increased risk for severe illness from COVID-19, including high blood pressure, but the medical records do not support Felix's claim that he has such a condition.[8]

Because Felix does not suffer from any of the medical conditions listed above, he is not at high risk of severe illness from COVID-19.  He simply (and understandably) fears contracting COVID-19 while incarcerated.  Such a generalized fear, however, does not

---

[6] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited July 24, 2020).

[7] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited July 24, 2020).

[8] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited July 24, 2020).

constitute an extraordinary and compelling reason for compassionate release. See United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread"); United States v. Nwankwo, No. 12 Cr. 31 (VM), 2020 WL 2490044, at *1-2 (S.D.N.Y. May 14, 2020) ("the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease"); United States v. Jaramillo, No. 17 CR 4, 2020 WL 2306564, at *1 (S.D.N.Y. May 8, 2020) (denying compassionate release motion where defendant failed to demonstrate a specific medical condition that placed him at extraordinary risk of infection or severe illness from COVID-19); United States v. Eberhart, Case No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13").

Moreover, Felix has not demonstrated that the Bureau of Prisons will not or cannot guard against or treat COVID-19. See United States v. Stevens, 04-CR-222S, 2020 WL 2393306, at *6 (W.D.N.Y. May 12, 2020); Korn, 2020 WL 1808213, at *6; see also United States v. Gagne, No. 3:18-cr-242 (VLB), 2020 WL 1640152, at *4 (D. Conn. Apr. 2, 2020) (denying compassionate release where the defendant failed to show "that the [Bureau of Prisons] cannot adequately manage the [COVID-19] pandemic or treat her to a

reasonable degree"); United States v. Zywotko, Case No. 2:19-cr-113-FtM-60NPM, 2020 WL 1492900, at *2 (M.D. Fla. Mar. 27, 2020) (denying compassionate release where "the BOP has implemented an action plan to mitigate the effect of COVID-19 and prevent potential transmissions into and throughout its correctional facilities"); Gileno, 2020 WL 1307108, at *4 ("Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno.").

The Bureau of Prisons has experience combatting infectious diseases and has developed and implemented a multi-point plan to battle COVID-19. Preparations began in early 2020 when the Bureau of Prisons instituted its Pandemic Influenza contingency plan, specifically modified to fight COVID-19.[9] This plan is based on guidance and directives from the World Health Organization, the CDC, and other related agencies. Under this plan, the Bureau of Prisons has implemented quarantine and isolation protocols, restricted inmate transfers, reduced overcrowding, limited group gatherings, employed screening procedures, and suspended visitation and tours.[10]

These and other measures are constantly reassessed to further mitigate the exposure and spread of COVID-19 among the federal prison population. And these measures appear to have proven effective at FCI Loretto: there are only 8 inmate cases and 2 staff cases as of this writing, although it is unclear whether those cases are in the low-security correctional facility or the adjacent minimum-security satellite camp, which is

---

[9] See https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19_response (last visited July 24, 2020).

[10] See https://www.bop.gov/coronavirus/covid19_status.jsp (last visited July 24, 2020).

where Felix is held.[11] (Motion for Compassionate Release, p. 6.)

In the end, Felix alleges nothing more than the general possibility that he could contract COVID-19, and he has made no showing that FCI Loretto's plan and efforts to combat the disease are inadequate or that the facility is unable to adequately treat him if he falls ill. To the contrary, it appears that the BOP's efforts at FCI Loretto are working. Consequently, this Court finds that Felix fails to demonstrate an extraordinary and compelling reason for a sentence reduction under U.S.S.G. § 1B1.13 comment n. 1 (D) based on COVID-19. See Stevens, 2020 WL 2393306, at *6-7 (denying compassionate release to defendant in facility with no reported cases alleging only the general possibility of contracting COVID-19); Korn, 2020 WL 1808213, at *6-8 (denying compassionate release to defendant who failed to show inadequacy in Bureau of Prisons plan or ability to treat him); see also Gileno, 2020 WL 1307108, at *4; Eberhart, 2020 WL 1450745, at *2; Zywotko, 2020 WL 1492900, at *2; Gagne, 2020 WL 1640152, at *4.

### 3. Consideration of the § 3553 (a) Factors

Even if Felix had demonstrated extraordinary and compelling reasons for a sentence reduction (which he has not), this Court would find that those reasons are outweighed by consideration of the § 3553 (a) factors and that Felix's original sentence would be undermined by a sentence reduction. See 18 U.S.C. § 3582 (c)(1)(A) (requiring consideration of the applicable § 3553 (a) factors); see also Ebbers, 2020 WL 91399, at *7. The § 3553 (a) factors include, *inter alia*, the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford

---

[11] https://www.bop.gov/coronavirus/ (last visited July 24, 2020).

adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities.  See 18 U.S.C. § 3553 (a).

Felix ran a multi-kilogram narcotics operation.  (Presentence Report, ¶ 20.)  He received shipments of cocaine and heroin from Puerto Rico and then sold the narcotics from his residence in a multi-unit apartment complex in downtown Buffalo.  (Id. ¶ 10.)  Felix sold narcotics to customers in Buffalo, and made multiple sales of controlled substances to a DEA confidential source, until July 16, 2018, when he was arrested, and his apartment was searched.  (Id. ¶¶ 11-18.)  The search yielded 87.9 grams of heroin, 10.8 grams of cocaine, four firearms, ammunition, $196,614 in cash, drug ledgers, cutting agents, and a money counter.  (Plea Agreement, ¶ 4.)  In total, Felix 's admitted relevant conduct involved 1,000 kilograms but less than 3,000 kilograms of drug weight.  (Id.)  Analysis of the drug ledgers revealed that between March 29, 2013, and July 4, 2018, Felix distributed at least 13.795 kilograms of cocaine for a minimum amount of $571,452.  (Presentence Report, ¶ 25.)

For this serious criminal activity, this Court imposed a 123-month sentence, which was the lowest aggregate sentence in the recommended guideline range.  This is a fair, just, and reasonable sentence which, in this Court's view, would be severely undermined by a reduction to time served after just 12 months.  Such a reduced sentence would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, or protect the public from future crimes by the defendant.  See 18 U.S.C. § 3553 (a).  Such a reduction would also result in unwarranted sentencing disparities.  Id.  Accordingly, consideration of the § 3553 (a) factors outweighs any extraordinary and compelling reasons for a sentence reduction.

### 4. Consistency of a Reduction with U.S.S.G. § 1B1.13

Finally, even if Felix had demonstrated extraordinary and compelling reasons for a sentence reduction that are not outweighed by consideration of the § 3553 (a) factors (which he has not), this Court would find that a sentence reduction is not consistent with U.S.S.G. § 1B1.13. See 18 U.S.C. § 3582 (c)(1)(A) (requiring that any sentence reduction be consistent with applicable policy statements issued by the Sentencing Commission); U.S.S.G. § 1B1.13 (2). This inquiry requires a determination as to whether the defendant poses a danger to the safety of any person or to the community if released.

In addition to his significant drug-trafficking activities, Felix possessed numerous weapons to protect his operation. During the search of Felix's residence, a loaded pistol with an extra magazine was discovered in a "fanny pack" in the rear bedroom. (Presentence Report, ¶ 19.) Another pistol and several magazines were also discovered. (Id.) Two more firearms were discovered in pieces of luggage: an AR-15 style 5.56 mm rifle with no serial number or manufacturer information, and a Zastava PAP assault style rifle, commonly referred to as an AK-47. (Id. ¶¶ 19, 26.) Collectively, 525 rounds of ammunition were also discovered in the residence. (Id. ¶ 19; Plea Agreement, ¶ 4.) Felix admitted that he possessed these firearms and ammunition in furtherance of his drug-trafficking activities. (Plea Agreement, ¶ 3.)

Thus, given the nature and extent of Felix's drug-trafficking activities and his possession of multiple and varied firearms and ammunition, this Court finds that he poses a danger to the community if released.

## IV. CONCLUSION

For all of the reasons stated above, this Court finds that compassionate release under 18 U.S.C. § 3582 (c)(1)(A)(i) is not warranted. Felix's motion will therefore be denied.

## V. ORDER

IT HEREBY IS ORDERED, that Felix's Motion for Compassionate Release (Docket No. 47) is DENIED.

SO ORDERED.


Dated:   July 29, 2020
         Buffalo, New York

                                           s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                         United States District Judge